J-A06027-18

2018 PA Super 91

| | | |
|---|---|---|
| JAMES K. CORVIN III, AN INDIVIDUAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1263 WDA 2017 |
| DENNIS P. TIHANSKY, AN INDIVIDUAL | : | |

Appeal from the Judgment Entered July 21, 2017
In the Court of Common Pleas of Washington County Civil Division at
No(s): 2011-9139

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

OPINION BY SHOGAN, J.: **FILED APRIL 20, 2018**

Appellant, James K. Corvin III, appeals from the judgment entered on July 21, 2017, in the Court of Common Pleas of Washington County, following the trial court's denial of Appellant's post-trial motion for judgment notwithstanding the verdict ("JNOV") or for a new trial. We affirm.

The trial court summarized the facts and history as follows:

> On November 9, 2010, [Appellant] was stopped at a stop sign in Washington County, when he was rear-ended by an automobile driven by Dennis P. Tihansky, [Appellee ("Tihansky")]. An ambulance took [Appellant] to the Washington Hospital where he was examined, treated and released. On November 10, 201[0], he visited his primary care physician, Dr. Means, complaining of neck pain, headache and dizziness, lightheadedness and arm pain. Dr. Means prescribed pain medication and ordered physical therapy. Two weeks later [Appellant] returned with the same complaints. He related that

_____
* Retired Senior Judge assigned to the Superior Court.

he had not been to work because he could not focus while driving or on paperwork. Approximately two weeks later, [Appellant] returned and reported he was no better. Dr. Means prescribed an MRI test. After viewing the MRI results, Dr. Means referred [Appellant] to Dr. Maroon, a neurosurgeon, who examined [Appellant] on January 11, 2011. Dr. Maroon diagnosed a herniated disc at C6-7 and recommended an anterior cervical discectomy and interbody fusion.[1]

A complaint was filed and eventually the matter came to be heard by a jury in October of 2016. [Tihansky] admitted negligence. On the fourth day of trial, the case was handed to the jury along with a verdict slip. Question 1 asked:

> Do you find from a preponderance of the evidence that the negligence of [Appellee], Dennis P. Tihansky, was a factual cause of any harm to [Appellant], James K. Corvin, III?

The jury answered "No" and returned to the courtroom.

[Appellant] filed a timely motion for post-trial relief, requesting in the alternative, [JNOV], or a new trial. (Given [Tihansky's] admission of negligence, granting either form of relief would result in another trial limited to the issue of damages).

Trial Court Opinion, 7/7/17, at 1–2. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement on September 20, 2017. In lieu of a Pa.R.A.P. 1925(a) opinion, the trial court relied upon its opinion denying post-trial relief filed on July 7, 2017.

Appellant raises the following issues for our review:

I. Did the Trial Court commit error in denying [Appellant's] Motion for Judgment Notwithstanding the Verdict (JNOV) on the issue of causation, when the verdict was such that

_____

[1] Appellant underwent surgery in January of 2011. N.T., 10/25/16, at 53.

no two reasonable minds could disagree that there should have been a causation finding in favor of [Appellant]? More specifically, did the Trial Court commit error by denying [Appellant's] Motion for Judgment Notwithstanding the Verdict (JNOV) on the issue of causation despite the fact that [Tihansky's] own expert admitted that [Appellant] sustained an injury as a result of the subject automobile accident?

II. Did the Trial Court commit error in denying [Appellant's] Motion for a New Trial on the issue of causation when the verdict was against the clear and substantial weight of the evidence? Specifically, in light of the fact that [Tihansky's] own expert admitted that [Appellant] sustained an injury as a result of the subject automobile accident, did the jury's finding of "no causation" shock one's "sense of justice?"

Appellant's Brief at 6.

Appellant's first issue involves the following standards. The propriety of a JNOV is a question of law, and therefore, our scope of review is plenary. *Foster v. Maritrans, Inc*., 790 A.2d 328, 330 (Pa. Super. 2002). When the denial of JNOV is challenged on the basis that the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, as here, this Court reviews the evidentiary record and must conclude "that the evidence was such that a verdict for the movant was beyond peradventure." *Reott v. Asia Trend, Inc*., 7 A.3d 830, 835 (Pa. Super. 2010). Moreover,

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standards of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical.

We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Reott*, 7 A.3d at 835.

Appellant argues that because Tihansky's medical expert admitted that Appellant sustained an injury when Tihansky rear-ended Appellant, who was stopped at a stop sign, the jury's finding that Tihansky's negligence was not a factual cause of any harm "is incomprehensible." Appellant's Brief at 16. Moreover, because Tihansky admitted negligence, Appellant contends that "no two reasonable minds could disagree that a causation finding should have been rendered in favor of [Appellant,] and [Appellant's motion for JNOV] should have been granted." *Id*.

Before we address the merits of this issue, we must ascertain whether it was preserved for our review. Following our careful review of the record, we agree with Tihansky that the issue is waived because Appellant failed to move for a directed verdict at the close of Tihansky's evidence and withdrew his request for a binding jury instruction. Tihansky's Brief at 10. Appellant acknowledges that he failed to move for a directed verdict but posits we should overlook the waiver, relying upon *Ty-Button Tie, Inc. v. Kincel and Co., Ltd*., 814 A.2d 685 (Pa. Super. 2002), and *Soderburg v. Weisel*, 687 A.2d 839, 845 (Pa. Super. 1997), in support. Appellant's Brief at 16 n.1; N.T., 10/26/16, at 175. Appellant suggests, like the appellant in *Ty-Button*, that while he "technically waived [his] right to JNOV by not moving

for a directed verdict," this Court should overlook the error and address the issue on the merits "because the trial court took the opportunity to address any error it may have made by its review of Appellant's Post-Trial Motions." Appellant's Brief at 16–17 n.1. Tihansky counters that the exception addressed by this Court in **Ty-Button** does not apply herein. Tihansky's Brief at 11.

This Court requires a motion for directed verdict during trial as a prerequisite to a post-trial motion for JNOV based on the state of the evidence. **Thomas Jefferson Univ. v. Wapner**, 903 A.2d 565, 570 (Pa. Super. 2006). This approach has the salutary effect of submitting the issue to the trial judge for initial evaluation during trial, when the proofs are still fresh. **Commonwealth v. U.S. Mineral Products**, 927 A.2d 717, 725 (Pa. Cmwlth. 2007). The right to seek JNOV likewise is preserved if the moving party requests, and is denied, a binding jury instruction. **See** Pa.R.C.P. 227.1(b)(1); **Hayes v. Donohue Designer Kitchen, Inc.**, 818 A.2d 1287, 1291 n.4 (Pa. Super. 2003) ("[C]ases indicate that in order to preserve the right to request a JNOV post-trial[,] a litigant must first request a binding charge to the jury or move for directed verdict at trial."). **Thomas Jefferson**, 903 A.2d at 570.

Herein, Appellant initially requested a jury instruction in accordance with 7.50 of the Pennsylvania Suggested Standard Civil Jury Instructions regarding undisputed negligence and injury. N.T., 10/26/16, at 178–179.

Tihansky objected to this instruction on the basis that he did not concede that Appellant was injured in this accident. In response, Appellant's counsel acquiesced and stated, "I would like to omit [proposed point 7.50 of the standard jury instructions, undisputed negligence and injury] and [I] agree with [defense counsel's] objections to this in terms of the negligence caused some injury to [Appellant]." N.T., 10/26/16, at 179–180.

The above scenario is nearly identical to the situation in *Thomas Jefferson*. There, in reviewing the parties' points for charge, the trial court indicated an inclination to utilize the defendants' points for charge, but it entertained the parties' objections and argument on the issue. Regarding the binding instruction that the appellant had sought, the appellant "agreed not to pursue the instruction it initially proffered . . . ." *Thomas Jefferson*, 903 A.2d at 571. We concluded in *Thomas Jefferson* that the appellant did not preserve its right to request JNOV by moving for a binding jury instruction. Although it initially requested a binding instruction, as Appellant herein, it decided during the jury-instruction sidebar not to pursue it. *Id*. at 571–572.

As to Appellant's suggestion that we should overlook waiver based upon this Court's action in so doing in *Ty-Button*, we conclude that case is distinguishable. *Ty-Button* concerned a party's failure to file a motion for a directed verdict on the issue of insurance coverage. While noting the appealing party's failure to preserve its claim, we nonetheless addressed the

- 6 -

merits "because the trial court took the opportunity to address any error it may have made by its review of [the appellant's] Post–Trial Motions." **Ty-Button**, 814 A.2d at 689–690 (citing **Soderberg**, 687 A.2d at 845) (holding that "Superior Court will not preclude presentation of issue for failure to comply strictly with Pa.R.Civ.P. 227.1(b) when trial court had an opportunity to correct error by addressing Post–Trial Motions and chose to address them").

Here, as in **Thomas Jefferson**, however, **Ty-Button** and **Soderberg** are inapplicable. While the instant trial court discussed the merits of Appellant's claim in the opinion denying post-trial motions, "its efforts cannot be construed as an opportunity to review a prior ruling or correct an error it made." **Thomas Jefferson**, 903 A.2d at 573. As noted *supra*, Appellant did not request a binding instruction **that the trial court erroneously denied**. Rather, as in **Thomas Jefferson**, Appellant submitted a proposed instruction, and when Tihansky objected to it, Appellant "affirmatively abandoned it" and withdrew its request. **Id**.; N.T., 10/26/16, at 179–180. "Therefore, there could have been no error committed by the trial court, as that court was not asked to rule on the instruction, and, in fact, issued no ruling at all." **Thomas Jefferson**, 903 A.2d at 573. Moreover, similar to our conclusion in **Thomas Jefferson**:

> We note that even if it were the case that the **Soderberg** exception applied to every matter in which a trial court addressed an unpreserved issue in its opinion, we nonetheless would conclude that the exception is inappropriate here.[7] This is

not a garden-variety waiver case in which Jefferson failed to lodge an exception following the trial court's adverse ruling on a requested jury instruction. Rather, it is a case in which Jefferson affirmatively approved the instruction given by the trial court. Under these circumstances, Jefferson simply is not entitled to appellate review.

> [7] We note that in **Takes** [**v. Metropolitan Edison Co.**, 655 A.2d 138 (Pa. Super. 1995) (*en banc*), rev'd in part, 695 A.2d 397 (Pa. 1997)], the case upon which **Soderberg** relied, our Supreme Court reversed the panel's decision to consider a waived issue. **Takes**, 695 A.2d [at] 401. The Court cautioned that a "trial court may not eliminate the entire purpose of making a record and invalidate the directive in **Dilliplaine** [**v. Lehigh Valley Trust Co.**, 322 A.2d 114 (Pa. 1974)] simply by addressing an issue" and the appellate court need not blindly defer to a trial court that does so. **Id**. Further, **Soderberg's** continued application is questionable in light of the development of the law in a similar context, namely the mandate of Pa.R.A.P. 1925(b), as espoused in **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998). . . . The rationale for this rule is plain: whether an appellate court reviews an issue cannot be based on the conduct, decision or whim of the trial court; rather, it must be based on the actions of the appellant in properly preserving issues for review. **Id**. at 779–80.

**Id**.

Thus, we conclude that Appellant has waived his right to seek JNOV by his failure to seek a directed verdict. In addition, Appellant's withdrawal of the request for the binding jury instruction and instead, his asserted acquiescence in the trial court's charge, constituted waiver.

Appellant's second issue alleges the trial court improperly denied his request for a new trial. "Our standard of review in denying a motion for a

- 8 -

new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion." *Stapas v. Giant Eagle, Inc.*, 153 A.3d 353, 359 (Pa. Super. 2016), *appeal denied*, 171 A.3d 1286 (Pa. 2017) (quoting *Cangemi ex rel. Estate of Cangemi v. Cone*, 774 A.2d 1262, 1265 (Pa. Super. 2001)). Here, Appellant's challenge is to the weight of the evidence.

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Phillips v. Lock*, 86 A.3d 906, 919 (Pa. Super. 2014) (internal quotation marks and citation omitted).

> We stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007) (citing *Carrozza v. Greenbaum*, 866 A.2d 369, 380 (Pa. Super. 2004), and *Kruczkowska v. Winter*, 764 A.2d 627, 629 (Pa. Super. 2000)).

In examining the evidence presented, and in concluding the verdict did not shock its sense of justice, the trial court noted the following:

Four physicians testified, all by video deposition, two on behalf of [Appellant] and two on behalf of [Tihansky]. Dr. Means, [Appellant's] primary care physician, saw him the day after the accident, when [Appellant] complained of neck pain and headaches, and then two weeks later, and then again two weeks after that. Dr. Means treated him conservatively, with pain medications and physical therapy, but eventually referred him for an MRI. After reviewing the MRI results, Dr. Means referred [Appellant] to Dr. Maroon, a neurosurgeon. Dr. Means made no diagnosis, either of a herniated disc or muscle sprain or strain. Dr. Means acknowledged on cross examination that during his post-accident treatment of [Appellant,] he was unaware that [Appellant] made several visits to a chiropractor eight months before the accident, naming many of the same complaints with which he presented to Dr. Means after the accident.

Dr. Maroon accepted Dr. Means' referral and examined [Appellant]. He testified that [Appellant] told him that after the accident he developed headaches, neck pain and arm pain. He also testified that he had been unaware of [Appellant's] March 2010 chiropractor visits where he complained of many of the same symptoms. From the MRI results, Dr. Maroon saw evidence of preexisting degenerative changes in [Appellant's] cervical spine, typical in a man of [Appellant's] age. Dr. Maroon diagnosed a herniated disc at C6-7, and after consultation with [Appellant], performed an anterior cervical discectomy and interbody fusion. This procedure afforded [Appellant] significant, but not total, relief. Dr. Maroon opined: "Well, given the history that I obtained that he was not under any treatment plan with any other practitioner at the time and he had a history of a motor vehicle accident and immediately following the motor vehicle accident experienced these particular symptoms, it was my understanding or my conclusions that the proximate cause of his complaints were (sic) related to the automobile accident even though he did have preexisting degenerative disc disease which is present in probably eighty percent, seventy percent of people his age." *Maroon Dep 14*. Dr. Maroon diagnosed a herniated disc resulting from the accident. He nowhere diagnosed a muscle or cervical strain or sprain.

- 10 -

[Tihansky] called Dr. Shaer, who never examined [Appellant] and based all his opinion on a review of the medical records and diagnostic test results. He opined "that there is no imaging evidence of injury as a result of the motor vehicle accident of November 9, 2010.["] *Shaer Dep 28*. He testified that the condition of [Appellant's] cervical spine was due solely to aging and degenerative disc disease process.

Finally, [Tihansky] called Dr. Zorub, who reviewed the records and examined [Appellant] in November of 2012. During that examination, [Appellant] told him "that he had no prior symptomology. And, yet, when I looked at the records, it's quite obvious he did." *Zorub Dep 12*. Later, he testified that "my opinion was that he sustained a cervical strain in the vehicular event." *Id* 21. He said [Appellant] "sustained a mechanical flexion/exterior strain or injury, if you want, in the vehicular event[.]" [*I*]*d* 26. Under cross examination, he testified that [Appellant] "simply sustained a mechanical flexion and exterior injury or strain, if you wish...In other words, I think it's a muscular and ligamentous aggravation or injury[.]" [*I*]*d* 36. Finally, he said "but I will credit that he sustained an acute strain in the event, which became more symptomatic... but I do not think, that based upon the records, as well as my own findings that the treatment he underwent was simply because due [sic] to the vehicular event. There would be no reason to treat him if he didn't have the pre-existing condition." *Id* 39.

This case was tried to recover damages for [Appellant's] herniated disc. He never claimed to have suffered a cervical strain and neither physician that he called diagnosed him as having suffered a cervical strain. Both expressed some surprise when they learned that similar symptoms had sent [Appellant] to a chiropractor some eight months before the accident. There certainly was no consensus among the medical experts that [Appellant] suffered a cervical strain. Dr. Maroon testified [Appellant] suffered from a herniated disc and described the procedure to remedy that injury. Dr. Means testified that his opinion was that [Appellant] is permanently disabled because of the motor vehicle accident and the treatment he received because of it, including the discectomy, which he believes the accident made necessary. He did not opine that [Appellant] is permanently disabled because of a cervical strain.

This case is very similar to Maiczyk vs. Oesch, 789 A.2d 917 (Pa. Super. 2001), an *en banc* decision. In that case, the plaintiff was a passenger in a car that was rear-ended by the defendant's vehicle. She alleged that the impact caused a herniated disc which required surgery to repair. The defendant's expert conceded that the plaintiff had sustained some injury, but not a herniated disc. Instead, he opined that the plaintiff had suffered a cervical strain. The jury returned a defense verdict. The Superior Court framed the issue thusly: May a jury find for a defendant despite his or her obvious negligence where it does not believe that the plaintiff's pain and suffering are compensable? The Superior Court first observed that not all pain and suffering is compensable, Boggavarapu vs. Ponist, 542 A.2d 516 (Pa. 1988) and then pointed out that the plaintiff was seeking compensation for a serious injury, a herniated disc and subsequent surgery, and not for a few days or weeks of discomfort. It was entirely within the jury's province to find that the plaintiff had suffered no compensable injuries. The trial court was therefore affirmed.

Here, the only evidence of [Appellant's] cervical strain was his description of his symptoms to his doctors and Dr. Zorub. Given the fact that he kept the knowledge of the pre-accident existence of similar symptoms from all the physicians he encountered, it might be observed that he presented to the jury an issue of credibility.

Trial Court Opinion, 7/7/17, at 3–6.

In making his argument that the jury's verdict was against the weight of the evidence, and while acknowledging that the case is distinguishable, Appellant's Brief at 24, Appellant relies on **Neison v. Hines**, 653 A.2d 634 (Pa. 1995). In **Neison**, the defendant's vehicle struck the plaintiff's vehicle in the rear, as here. The defendant admitted liability, but the jury awarded no damages on the ground that the defendant's negligence had not caused the plaintiff harm. The trial court had awarded a new trial, this Court reversed the award of a new trial, and our Supreme Court reversed us. **Id**.

- 12 -

Based on the fact that the defense had failed to produce any evidence to refute the existence of injury from the accident and that common sense dictated that the accident, at least, caused pain, the Supreme Court concluded that the trial court correctly determined that the jury's verdict bore no rational relationship to the evidence presented at trial. *Id*. at 638.

*Neison* is distinguishable. The plaintiff in *Neison* did not suffer from a pre-existing condition, as did Appellant. The *Neison* defendant did not present a medical expert that denied the plaintiff's injuries, as herein. Moreover, Appellant was involved in a low–speed collision that resulted in minimal damage, whereas the collision in *Neison* was described as "violent." *Neison*, 653 A.2d at 637.

In making his argument, Appellant fails to acknowledge that one of Tihansky's expert witnesses, Dr. Andrew Shaer, who testified by deposition, did not concede that Appellant was injured in the accident. Deposition of Andrew H. Shaer, M.D., 10/17/13, at 28–30; N.T., 10/26/16 (Vol. II), at 168. In fact, Dr. Shaer testified that his opinion, with reasonable medical certainty, was that Appellant did not suffer any injury as a result of the accident with Tihansky. Deposition of Andrew H. Shaer, M.D., 10/17/13, at 28–30; N.T. (Vol. II), 10/26/16, at 168.

Tihansky's expert, David S. Zorub, M.D., also testified by deposition. He examined Appellant in November of 2012 in addition to reviewing the records of the other physicians. Deposition of David S. Zorub, M.D.,

10/18/13, at 33; N.T., 10/26/16 (Vol. II), at 175. After examining records but before examining Appellant, Dr. Zorub testified that "it was possible" that "at most [Appellant] sustained a mechanical cervical flexion/extension strain as a result of the accident." Deposition of David S. Zorub, M.D., 10/18/13, at 31. After examining Appellant in November of 2012, he opined that Appellant did not have "an aggravation of a pre-existent injury," but rather, "had a preexisting condition injury." *Id*. at 35–36. Dr. Zorub opined that Appellant's injury "could constitute an aggravation of a pre-existent process . . . to the muscles and the ligaments of the spine, as there was no evidence of . . . "anything that happened mechanically to the spine in that particular event." *Id*. at 36. The phraseology that Appellant "could have" or "may have" suffered injury is reminiscent of this Court's suggestion that such language does not constitute consensus among medical experts. *See Andrews v. Jackson*, 800 A.2d 959, 963 (Pa. Super. 2002) (phrases that accidents "could have" or "may have" caused injury did not contradict a consensus among medical experts that the accident caused some injury).

Dr. Maroon, the physician who performed Appellant's surgery, in his report of January 11, 2011, stated that Appellant "did explain to me at his visit today that he **had no problems with his neck or upper extremities prior to the accident and was never seen by any doctor or had undergone any testing in regard to this prior to this accident**." Deposition of Joseph C. Maroon, M.D., 10/10/16, at 24; N.T., 10/25/16 (Vol.

- 14 -

I), at 104 (emphasis added). Dr. Maroon confirmed that the above self-reporting "turned out to be inaccurate." Deposition of Joseph C. Maroon, M.D., 10/10/16, at 26. Dr. Maroon agreed that an understanding of a patient's "pre-accident or pre-visit history . . . is vital to a physician not only in treating the disorder but in determining the cause of it." *Id*. at 23.

Appellant's argument required the trial court to conclude that the jury had to ignore 1) that the impact of the accident may not have been sufficient to cause injury; 2) that Appellant withheld information concerning his pre-accident medical history; and 3) that Dr. Shaer opined that Appellant did not suffer an injury in the accident. Such a claim suggests the trial court should substitute its judgment for that of the jury, the fact finder herein. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's motion for a new trial based on the weight of the evidence.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2018

- 15 -