2014 PA Super 257

| | |
|---|---|
| GEORGE POMROY, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF MARIANN POMROY DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA AND ANTHONY G. ROSATO, EXECUTOR OF THE ESTATE OF ERNEST F. ROSATO, M.D., DECEASED | |
| Appellants | No. 2043 EDA 2013 |

Appeal from the Judgment Entered June 12, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2009, No. 4756

BEFORE:  GANTMAN, P.J., PANELLA, J., and STABILE, J.

OPINION BY PANELLA, J.                    **FILED NOVEMBER 19, 2014**

Appellants, the Estate of Ernest F. Rosato, M.D., and Hospital of the University of Pennsylvania, appeal from the judgment entered after the denial of their post-trial motions for judgment notwithstanding the verdict ("JNOV"). We conclude that the record is legally insufficient to support the jury's verdict.  As a result, the trial court erred in denying Appellants' motions for JNOV and we must reverse.

This appeal arises from a medical malpractice claim against Dr. Rosato.  All parties agree that there was no claim that Dr. Rosato failed to secure informed consent from the decedent, Mariann Pomroy, nor is there

any claim that Dr. Rosato committed professional negligence while operating on Mrs. Pomroy. In fact, the greatest difficulty in reviewing this appeal arises from the fact that the standard of care asserted by Appellees at trial varied each time the issue was broached. As discussed below, there were three distinct standards provided to the jury, implicitly or explicitly, by Appellees' expert.

Mrs. Pomroy had a long history of gastrointestinal issues and multiple abdominal surgeries. When her long-time gastroenterologist, Andrew Fanelli, M.D., informed her that she was suffering from a large, possibly cancerous polyp in her colon, he discussed several treatment options with Mrs. Pomroy.[1] Both Mrs. Pomroy and Dr. Fanelli were concerned about the size of the polyp and the risk that removing the polyp during a colonoscopy[2] could leave her colon perforated.[3] A saline colonoscopy or saline endoscopy

---

[1] A polyp is a growth from the inside lining of the intestine.

[2] A colonoscopy is a diagnostic test that looks at the inside of the colon. This is an important test for adults because the inside of the colon is where polyps and tumors originate. A pathologist can examine the growth of a polyp to see if there are signs of dysplasia—that the tissue is not normal and may be on its way to a cancer.

[3] There are different criteria which lead to a decision to remove a polyp, including size and shape. A polyp which protrudes can be removed during a colonoscopy by inserting a snare, a little lasso, through the colonoscope, and then encircling the polyp at its base and tightening the snare, thereby cutting it off. A flat lesion is removed during a piecemeal process that involves shaving it away little by little until the whole polyp is off. A gastroenterologist performs these procedures.

is a colonoscopy procedure whereby saline solution is injected through the colonsoscope into the area beneath the lining of the intestine, thereby increasing the distance between the lining and the outer wall. The saline colonoscopy reduces the risk of perforation.

Because of the size of Mrs. Pomroy's polyp and his concerns over a possible perforation of her colon if the polyp were removed colonoscopically, Dr. Fanelli recommended surgery.[4] The trial testimony of George Pomroy, the decedent's husband, in summarizing Dr. Fanelli's advice, was:

> We went back and he told her it wasn't cancerous and that it was rather large and he's going to recommend us to a surgeon down at the University of Pennsylvania Hospital. And said there's another way to do it, it's with the saline solution, something like that. But he thought in his opinion that it was too large and that there was a risk of perforation because of the size of the polyp.

N.T., Trial, 2/21/13, at 25.

According to Mr. Pomroy, his wife was against having the polyp removed during a colonoscopy: "[M]y wife . . . said she don't want to take a chance of perforating her bowel. So she said to him, [l]et's talk to the doctor." *Id*. Mr. Pomroy testified that although Dr. Fanelli did not put a specific risk factor on the saline solution procedure, he definitely

_____

[4] Surgery is another method for the removal of a polyp. After the surgical removal of the part of the colon with the polyp, the two ends of the colon are reattached in a procedure known as anastomosis.

recommended against it, and his wife was unwavering in accepting his advice:

> No, he didn't put a risk factor on it. He just said he thought it was too large and that there was a risk of perforation. He thought the surgery was probably a better idea. He's been her gastrointestinal doctor for 20 years. He's my doctor as well as he's her doctor. He's recommended numerous different doctors for us to do things. The two other surgeries my wife had, he recommended the doctors to do them. As a person you listen to your doctor. I thought so, anyway. She did and she always did.

*Id*., at 26.

As a result, Dr. Fanelli referred Mrs. Pomroy to Dr. Rosato for surgical removal of the polyp.

The Pomroys met with Dr. Rosato on October 14, 2008. Mr. Pomroy's uncontradicted testimony was that Dr. Rosato went over the possible risks of having the polyp removed surgically:

> He had said there's a risk of all the normal things that I've heard in other cases, in other surgeries with my wife. Risk of bleeding, risk of infection, risk of death, risk of a colostomy bag if it didn't work, and that's pretty much it. To my knowledge, again.

*Id*., at 31. Mrs. Pomroy insisted upon the surgical option while repeatedly rejecting the colonoscopic option. The uncontradicted testimony of Mr. Pomroy was that his wife feared having the polyp removed during a colonoscopy, even the saline colonoscopy method:

> Well, she said she didn't want to take the chance of having her bowel perforated and then have to have an emergency surgery . . . She said to me that she was afraid because Dr. Fanelli had said that there was a risk of perforation and it was too large to do that, that she really would not want to have that done.

*Id*., at 32. Consequently, Dr. Rosato performed the operation shortly thereafter. Following the surgery, Mrs. Pomroy suffered a series of complications that resulted in her unfortunate death. George Pomroy filed suit against Appellants, alleging medical malpractice against Dr. Rosato.[5] Pomroy's claims were tried by a jury, and on February 25, 2013, the jury returned a verdict in favor of the George Pomroy. This timely appeal followed. brief

On appeal, Appellants argue that the trial court erred in not granting their motion for judgment notwithstanding the verdict.[6] We review this issue according to the following standard of review

_____

[5] While no party to the appeal has discussed or even acknowledged this issue in documents filed with this Court, we note that Pomroy's Amended Complaint contains a cause of action for corporate negligence against the the Hospital. While the certified record is not clear on this point, it is apparent that Pomroy abandoned or withdrew this cause of action at some time during the proceedings. Pomroy did not present any evidence which supported this cause of action. Nor did Pomroy object to the trial court's failure to instruct the jury on this cause of action. In fact, Pomroy drafted the verdict slip, which did not include a question addressing a corporate negligence cause of action. Although we can find no explicit discussion of the issue in the certified record, it is clear from all the circumstances that the Hospital's only alleged liability at trial was premised upon its employment of Dr. Rosato. *See*, *e.g.*, N.T., Trial, 2/25/13, at 112 (noting that the parties agreed that Dr. Rosato was an employee of the Hospital while discussing a jury instruction on *respondeat superior*). Finally, Pomroy has not filed a cross-appeal from any adverse decision by the trial court on this issue. Thus, Pomroy has abandoned this issue on appeal, if not previously.

[6] Pomroy's Appellee's Brief contains passing arguments that Appellants have waived their right to judgment notwithstanding the verdict by failing to
*(Footnote Continued Next Page)*

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law and/or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Griffin v. Univ. of Pittsburgh Med. Center-Braddock Hosp.*, 950 A.2d 996, 999 (Pa. Super. 2008) (citing *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304-05 (Pa. Super. 1999)).

A claim of medical malpractice can be defined "as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). In order to prevail in a

*(Footnote Continued)* ──────────────

preserve the issues presented. To the contrary, Appellants filed both a motion for a non-suit at the close of plaintiff's case, and a motion for directed verdict at the conclusion of the case. The trial court summarily denied both motions. As the issues raised in the post-trial motion and currently before us on appeal address the sufficiency of the evidence to support the verdict, we conclude, under the specific circumstances of this case, that Appellants sufficiently preserved these issues.

medical malpractice action, a plaintiff must establish (1) a duty owed by the physician to the patient, (2) a breach of that duty by the physician, (3) that the breach was the proximate cause of the harm suffered, (4) and the damages suffered were a direct result of the harm. *See Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997). Because the nature of this cause of action encompasses knowledge and experience not commonly within the ordinary experience and knowledge of laypersons, the plaintiff must present expert testimony in order to establish the physician's applicable standard of care and the causation of the injury. *See Toogood*, 824 A.2d at 1145.

At the outset, we conclude that there is no evidence of causation to support the jury's verdict. In a negligence action, the plaintiff's burden of causation has two components (1) cause-in-fact and (2) legal or proximate cause. *See First v. Zem Zem Temple*, 686 A.2d 18, 21 n. 2 (Pa. Super. 1996). In a medical malpractice action, expert testimony is required to establish causation. *See Toogood*, 824 A.2d at 114. To establish cause-in-fact causation, a plaintiff must prove, through expert testimony, that "but for" the defendant's alleged negligent conduct, the harm suffered by the plaintiff would not have occurred. *See Whitner v. Von Hintz*, 263 A.2d 889, 894 (Pa. 1970). A jury's verdict must be based upon more than mere speculation on the issue of medical causation. *See Grossman v. Barke*, 868 A.2d 561, 567 (Pa. Super. 2005).

As stated above, there was no cause of action filed against Dr. Rosato for failing to secure informed consent from Mrs. Pomroy, nor is there any cause of action that Dr. Rosato performed the surgery in a negligent manner. In his brief to this court, Mr. Pomroy phrases the issue of Dr. Rosato's breach of the standard of care as follows: that Dr. Rosato deviated from an accepted standard of care by not insisting that Mrs. Pomroy undergo the saline colonoscopy, and that when she refused, he should have rejected her request to have the polyp removed surgically.

Appellees had to prove "but for" Dr. Rosato's failure to insist upon the saline method endoscopically, that Mrs. Pomroy would have rejected the surgical option, and rather would have elected the colonoscopic method. After careful review of the record, we agree with Dr. Rosato's position that no evidence was offered to prove that Mrs. Pomroy would have changed her mind and pursued saline endoscopy if Dr. Rosato had refused to provide her with the surgical removal option.

Testimony at trial indicated that Mrs. Pomroy feared colon perforation, a risk that exists as a consequence of the saline endoscopy treatment. **See** N.T., Trial, 2/21/12, at 30-31. This risk was acknowledged by all experts at the time of trial. She also knew of the risks associated with the surgical removal of the polyp. There is no cause of action or allegation that she was not properly advised of the risks of both procedures and that she did not give informed consent. After having been advised of the risks independently

associated with both of her treatment options and, knowing those risks, Mrs. Pomroy elected to have the surgery. *See id*., at 32. Furthermore, she preferred the surgical method in order to avoid having to undergo emergency surgery should she have elected to choose the colonoscopic method. *See id*. Appellees correctly summarize the conclusion of Mrs. Pomroy's meeting with Dr. Rosato:

> Mrs. Pomroy repeated she was frightened by the risk of perforation because the polyp was too large for the saline procedure. She agreed to surgery. . . .

Appellees' Brief, at 28 (citations omitted).

There was no evidence whatsoever that Mrs. Pomroy would have ever chosen the saline endoscopy method over the surgical method. The evidence from the Appellees' case-in-chief demonstrated that she was resolute in her fear of a perforation and her acceptance of Dr. Fanelli's advice. Thus, the jury was left to speculate as to whether Mrs. Pomroy would have allowed Dr. Rosato, or any another doctor, to pursue the saline endoscopy option, if Dr. Rosato had refused to perform the surgery. As a result, we conclude that the record cannot support the jury's verdict on medical causation.

We conclude that the record is deficient in another important aspect. Our review leads to the conclusion that Appellees failed to establish a valid standard of care for a medical malpractice claim. "A breach of a legal duty is a condition precedent to a finding of negligence . . . ." ***Shaw v. Kirschbaum***, 653 A.2d 12, 15 (Pa. Super. 1994). The legal duty imposed

under the doctrine of informed consent must be carefully distinguished from that imposed under the doctrine of medical malpractice. ***See Montgomery v. Bazaz-Sehgal***, 798 A.2d 742, 748-749 (Pa. 2002). The doctrine of informed consent requires physicians to provide patients with "material information necessary to determine whether to proceed with the surgical or operative procedure to remain in the present condition." ***Sinclair by Sinclair v. Block***, 633 A.2d 1137, 1140 (Pa. 1993). The physician must give the patient:

> [a] true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results. Thus, a physician must advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation.

***Montgomery***, 798 A.2d at 748. "Lack of informed consent is the legal equivalent to no consent[.]" ***Gouse v. Cassel***, 615 A.2d 331, 334 (Pa. 1992). Thus, a claim that a physician failed to obtain the patient's informed consent sounds in battery, not negligence. ***See Montgomery***, 798 A.2d at 748-749. There is no cause of action in Pennsylvania for negligent failure to gain informed consent. ***See Kelly v. Methodist Hospital***, 664 A.2d 148, 150 (Pa. Super. 1995).

The crux of the issue before us is the standard of care required of Dr. Rosato as established at trial. More specifically, what was Dr. Rosato required to do with respect to the alternative treatment method, the saline

endoscopy. During trial, Appellees' expert, Michael Drew, M.D., testified to the applicable standard of care:

> [Pomroy's Counsel]: Doctor, could you please tell the jury what the standard of care would be for a general surgeon in determining how to remove a non-cancerous polyp in an individual such as Mrs. Pomroy who had medical history that we just discussed?
>
> . . .
>
> [Dr. Drew]: The standard of care—Dr. Rosato, his advice, his opinion was that the best procedure was the saline method endoscopically. The standard of care, in my opinion, is that [the saline method endoscopically] should have been what he offered Ms. Pomroy.

N.T., Trial, 2/20/13, at 130-31. Dr. Drew later testified, "so in my opinion, by failing to pursue the saline option, he deviated from accepted standards of care." *Id*., at 132. Still later in his testimony, Dr. Drew summarized his opinion as follows:

> He [Dr. Rosato] knew that it was not the right procedure. He knew it. He told her that it wasn't the right procedure. He told her he should not have done the surgery. That's my only opinion. He had absolutely – she has every right to say what she wants to do. He has every right to say, "You know what? I don't agree with that, I'd like you to see another doctor, have another surgeon do this." We don't have to do something we don't believe is correct; that's my only point.

*Id*., at 178-179. This is yet a third standard of care put forth by Dr. Drew, that Dr. Rosato, despite having gained Mrs. Pomroy's informed consent, should have rejected her choice for the surgery.

Initially, we highlight the incongruous phrasing between Dr. Drew's statement of the standard of care and his descriptions of Dr. Rosato's

alleged breach of the standard of care. In stating the standard of care, Dr. Drew opined that Dr. Rosato was required to offer saline endoscopy as a treatment alternative. As noted above, however, this standard of care is properly addressed in a claim for battery due to lack of informed consent, which was not pled in this case. What is more, this is the only explicitly stated standard of care offered by Dr. Drew. All other possible standards of care require drawing inferences from Dr. Drew's testimony on the manner in which he believed Dr. Rosato breached the standard of care.

Perhaps Dr. Drew became aware of the dangerous legal waters his standard of care testimony was sailing into, as the implicit standard of care at issue morphed each time he opined on how Dr. Rosato breached it. After Dr. Drew had explained that the standard of care required Dr. Rosato to "offer" the saline option, when first questioned about *how* Dr. Rosato breached the standard of care, Dr. Drew opined that Dr. Rosato had failed to "pursue" the saline option. In essence, this standard of care required Dr. Rosato to perform the saline endoscopy over the surgical removal.[7] Thus, this implicit standard of care is legally distinct from that which Dr. Drew explicitly offered earlier in his testimony. In contrast to the explicit standard of care discussed above, this standard of care sounds in negligence, not battery.

---

[7] We note that this version of the standard of care most closely aligns with that set forth in Dr. Drew's written expert report dated July 5, 2011.

Finally, upon being questioned about whether Mrs. Pomroy had the option of choosing any of the treatment methods, Dr. Drew offered yet another iteration of the alleged breach: Dr. Rosato breached the standard of care by not refusing to perform the surgical removal. This statement is equivalent to a statement that Dr. Rosato was required to reject Mrs. Pomroy's request to have surgery and only perform the saline endoscopy option. The only significant addition provided by this version of the standard of care is that if Mrs. Pomroy refused the saline endoscopy option despite all advice, Dr. Rosato was required to simply refuse treating her at all.

We conclude, however, that these versions of the standard of care are untenable. Dr. Drew testified that polyps such as Mrs. Pomroy's should be removed, because there is no guarantee that even a currently benign polyp will not metastasize in the future. *See* N.T., Trial, 2/20/13, at 165-166. Accordingly, Dr. Drew's implicitly proffered standard of care in these circumstances would leave a treating physician in a no-win situation. The physician could refuse to treat the patient according to the patient's wishes, leaving that patient at an increased risk of developing cancer, but apparently insulating the physician from malpractice claims. In the alternative, the physician could treat the patient according to the patient's expressed preferences following an informed consent, but then be exposed to malpractice claims even though there are no criticisms of the surgery itself.

We decline to create such a trap for medical professionals, and we find no precedent in Pennsylvania law to support this standard.

Pomroy contends that there was a triable issue over whether Dr. Rosato properly discussed saline endoscopy with Mrs. Pomroy and advised her appropriately. However, this argument fails for the same reason. If the jury found that Dr. Rosato did not properly advise Mrs. Pomroy on the issue of saline endoscopy, such a finding would be relevant only to a battery claim, not a professional negligence claim. As we have said numerous times, there was no cause of action for lack of informed consent in this case.

As we conclude that the record cannot support the verdict on either liability or causation, Appellants' claims on appeal merit relief. We therefore reverse the trial court. The remaining issues are moot.

Judgment reversed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/19/2014</u>