J-A08024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SUZETTE M. INTIHAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRETT E. BOSTIAN, WAL-MART | : | No. 500 WDA 2022 |
| STORES EAST, L.P.; WAL-MART REAL | : | |
| ESTATE BUSINESS TRUST; AND | : | |
| WAL-MART, INC. | : | |

Appeal from the Order Entered April 6, 2022
In the Court of Common Pleas of Cambria County Civil Division at No(s):
2020-2500

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED:  September 8, 2023**

Suzette M. Intihar ("Intihar") appeals from the order granting summary judgment in favor of Wal-Mart Stores East, L.P., Wal-Mart Real Estate Business Trust, and Wal-Mart, Inc. (collectively, "Wal-Mart") in Intihar's personal injury action.[1]  We affirm.

Intihar's personal injury action arises from an accident that occurred in front of a Wal-Mart Supercenter ("the store").  Intihar left the store and was walking in the crosswalk to the store's parking lot when Brett E. Bostian ("Bostian") struck her with his motor vehicle.  **See** Intihar's Complaint,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court's order granting Wal-Mart's summary judgment motion did not dispose of all claims between all parties in Intihar's personal injury action.  **See** Pa.R.A.P. 341(b)(1).  However, as discussed below, the trial court timely certified the order for an immediate appeal.  **See** Pa.R.A.P. 341(c).

7/6/20, at 3 (unnumbered); *see also* Intihar's Deposition Exhibit 11; Bostian's Deposition Exhibit 14.[2]  The paint for the crosswalk's markings and instruction to "YIELD" on the roadway was faded.  *See* Intihar's Deposition Exhibit 7.  There was a yellow "pedestrian crossing" street sign on the curb by the crosswalk where the accident occurred.  *See* Intihar's Deposition, Part I, 3/26/21, at 45; Intihar's Deposition, Part II, 4/1/21, at 281-82.

Bostian remained at the scene and told a police officer that he looked away from the roadway before the accident because he thought he heard someone call his name.  *See* Bostian's Deposition, 4/29/21, at 29-31; *see also* Bostian's Deposition Exhibit 16.  Intihar suffered injuries to her leg, foot, and knee, including a "[c]omminuted and displaced left tibial plateau." Intihar's Complaint, 7/6/20, at 3-4.  Intihar underwent surgery and spent four days in the hospital after the accident.  *See* Intihar's Deposition, Part II, 4/1/21, at 197-99.

Intihar filed a complaint asserting Bostian's negligent operation of his vehicle and Wal-Mart's negligent design and maintenance of its premises. Wal-Mart and Bostian filed separate answers and new matter, as well as crossclaims against each other.

_____

[2] Surveillance cameras recorded the accident and showed two cars passing through the crosswalk as Intihar left the store and approached the crosswalk. *See* Intihar's Deposition Exhibit 11; Bostian's Deposition Exhibit 14; *see also* Bostian's Deposition, 4/29/21, at 77-81.  Moments after the second car passed through the crosswalk, Intihar entered the crosswalk, and Bostian struck Intihar.  *See* Bostian's Deposition, 4/29/21, at 55-59, 77-81.

During discovery, Intihar produced a preliminary letter report from Brad Avrit, P.E. ("Avrit"), a civil engineer. Avrit concluded the installation of "traffic calming devices," such as stop signs, could have prevented the accident. Letter Report from Brad Avrit, P.E., 12/15/21 at 7 ("Avrit's report").[3] Intihar and Bostian subsequently testified at depositions.[4] At his deposition, Bostian testified he was familiar with store and believed, mistakenly, there were stop signs on the roadway at the marked pedestrian crossings in front of the store. *See* Bostian's Deposition, 4/29/21, at 25. He asserted he thought he had stopped, or would have stopped but got distracted immediately before the accident because he thought he heard someone call his name and looked away from the crosswalk. *See* Bostian's Deposition, 4/29/21, at 26-27, 35, 69.

_____

[3] There had been a total of five accidents involving pedestrians struck in the parking lot of the store in the three years before the present accident, two of which occurred in the crosswalk. *See* Avrit's Report at 6. According to Intihar, one of those reports concerned an earlier accident at a different crosswalk by the same store. Intihar alleged that Wal-Mart subsequently placed stop signs at the site of the earlier accident. She also asserted Wal-Mart did the same shortly after her accident. The trial court did not rule on Wal-Mart's assertion that evidence of its subsequent remedial measures would be inadmissible. *See* Wal-Mart's Reply Brief in Support of Summary Judgment, 3/24/22, at 4; *see also* Pa.R.E. 407 (noting that evidence of subsequent remedial measures is not admissible to prove negligence, culpable conduct, defects in a design, or the need for warning or instructions, but a court may admit such evidence for other purposes).

[4] At her deposition, Intihar testified that she and Bostian had made eye contact just as she entered the crosswalk, but that Bostian proceeded to strike her as she was in the crosswalk. *See* Intihar's Deposition, Part I, 3/26/21, at 57-58.

Bostian maintained he did not see Intihar until just before impact. *See id*. at 26-27, 35.[5]

Wal-Mart moved for summary judgment arguing, in part, that it did not proximately cause Intihar's injuries. *See* Wal-Mart's Motion for Summary Judgment, 2/11/22, at 7. Wal-Mart asserted Bostian's statement to police and his deposition testimony were consistent and uncontradicted and established Bostian struck Intihar because he looked away from the crosswalk when he thought he heard someone call his name. *See id*. at 5-6, 8. Wal-Mart further argued Avrit's report did not raise a genuine issue of material fact because Avrit ignored Bostian's testimony concerning his familiarity with the roadway, his belief that he thought he needed to stop regardless of the type of sign posted at the crosswalk, and his claim that he would have stopped but for the distraction caused when he thought someone called his name. *See id*. at 6, 11. Intihar answered and generally denied Wal-Mart's characterizations of the record. Intihar maintained that the installation of a stop sign could have prevented the accident, and relied on Avrit's conclusion that Wal-Mart's failure to erect or install reasonable safety measures was a substantial contributing factor in the accident. *See* Intihar's Answer to Wal-Mart's Motion for Summary Judgment, 3/9/22, at 8-9 (unnumbered).

The trial court heard arguments on Wal-Mart's motion and, on April 6, 2022, granted Wal-Mart's motion for summary judgment. The court reasoned

---

[5] Wal-Mart produced recordings and still pictures from surveillance cameras at the front of the store.

that Bostian's distracted driving was the sole cause of the accident and Avrit's report failed to establish genuine issues of material fact concering whether Wal-Mart proximately caused the accident. **See** Trial Court Opinion, 7/7/22, at 11-15. Intihar timely filed a motion to amend the order granting Wal-Mart's summary judgment motion to include a determination of finality,[6] which the court granted on April 21, 2022. **See** Pa.R.A.P. 341(c). Intihar timely appealed. Both Intihar and the trial court complied with Pa.R.A.P. 1925.

Intihar raises the following issues for review:

A. Whether the trial court erred in granting summary judgment in favor of [Wal-Mart]?

B. Whether the trial court erred in concluding that Wal-Mart's actions and/or inactions were not the proximate cause of [Intihar's] injuries[?]

C. Whether the trial court erred in concluding that [Bostian] was solely responsible for the harm suffered by Intihar?

D. Whether the trial court erred by substituting its own judgment as to the allocation of fault between [Wal-Mart and Bostian] rather than allowing a jury to make that determination?

Intihar's Brief at 5 (some capitalization omitted).

Intihar's issues challenge the trial court's order granting summary judgment in favor of Wal-Mart. This Court's standard of review requires that we reverse a grant of summary judgment only if the trial court commits an error of law or abuses its discretion. **See Truax v. Roulhac**, 126 A.3d 991,

---

[6] Intihar, in seeking a certification of finality pursuant to Pa.R.A.P. 341(c), asserted that she and Bostian entered into a *pro rata* joint tortfeasor release that released Bostian from all claims in the matter. **See** Intihar's Motion to Amend Order, 4/21/22, at 3 (unnumbered).

996 (Pa. Super. 2015) (*en banc*). Our scope or review is plenary, and we must examine the entire record. **See Donegal Mut. Ins. Co. v. Fackler**, 835 A.2d 712, 715 (Pa. Super. 2003).

It is well settled that "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **See Truax**, 126 A.3d at 996 (internal citation and quotations omitted). "[A] record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense." **Olszewski v. Parry**, 283 A.3d 1257, 1263 (Pa. Super. 2022) (internal citation omitted) (italics added). A court must examine the factual record of a case in a light most favorable to the non-moving party. **See Brown v. City of Oil City**, 294 A.3d 413, 427 (Pa. 2023). This includes expert reports. **See Bourgeois v. Snow Time, Inc.**, 242 A.3d 637, 652 (Pa. 2020) (noting that a court may not *sua sponte* undermine an expert's opinion if there is sufficient support for the expert's conclusion).

To establish a claim of negligence, a plaintiff must prove: (1) that the defendant owed her a duty of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff. **See Newell v. Montana West, Inc.**, 154 A.3d 819, 822 (Pa. Super. 2017). To establish a *prima facie* case of negligence, the plaintiff must establish a causal connection between defendant's conduct and

the plaintiff's injury, even when the record demonstrates the defendant breached a duty of care owed to the plaintiff. *See Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978); *Straw v. Fair*, 187 A.3d 966, 993 (Pa. Super. 2018).

Causation has two components: (1) cause-in-fact and (2) legal or proximate cause. *See Pomroy v. Hosp. of University of Pennsylvania*, 105 A.3d 740, 745 (Pa. Super. 2014) (internal citation omitted). Cause-in-fact means that the plaintiff would not have suffered a harm "but-for" the defendant's alleged negligence. *See First v. Zem Zem Temple*, 686 A.2d 18, 21 n.2 (Pa. Super. 1996). Proximate cause requires that the defendant be a "substantial factor" in bringing about the harm suffered by the plaintiff. *Straw*, 187 A.3d at 993 (internal citation omitted).

As explained by our Supreme Court, proximate cause

involves the making of a judgment as to whether the defendant's conduct although a cause in the "but for" sense is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible. Section 431, comment a, Restatement [(Second) of Torts], explains the distinction between substantial cause and cause in fact as follows:

"The word 'substantial' is used to denote the fact that the defendant's conduct has such an [e]ffect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes."

***Ford v. Jeffries***, 379 A.2d 111, 114 (Pa. 1977) (internal citations omitted). "[T]he concept [of proximate cause], like that of negligence itself, was designed not only to permit recovery for a wrong but to place such limits upon liability as are deemed socially or economically desirable from time to time." ***Straw***, 187 A.3d at 994 (internal citation and quotations omitted). Factors relevant to the consideration of proximate cause include: "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it"; "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and the "lapse of time." ***Id***. at 994-95 (quoting Restatement (Second) of Torts § 433.)

More than one cause may contribute to and thus proximately cause an injury. ***See id***. at 995. However, a co-defendant, like Wal-Mart, is not liable to the plaintiff where a third-party co-defendant, like Bostian, is a "superseding cause" of the plaintiff's injury. To constitute a superseding cause, the third party's conduct must be so extraordinary that the defendant could not foresee it. ***See id***. Thus,

> [i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

*Id*. at 995-96 (internal citation, quotations, and brackets omitted). The negligence of the third-party will not relieve the defendant of liability if the defendant created the risk of a particular harm and was a substantial factor in causing the harm. *See id*. at 995.

Determinations of whether the defendant's conduct was a substantial factor and whether a third party's conduct was "extraordinary" are ordinarily matters for the finder of fact at trial. *See id*.; *Ford*, 379 A.2d at 114. A court properly enters summary judgment only where "the facts are so clear that reasonable minds could not differ . . .." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (internal citation omitted).

We summarize Intihar's arguments in this appeal together because they are related to the trial court's conclusion that Bostian was the sole cause of the accident and Wal-Mart's negligence in the design of the crosswalk was not a proximate cause. Intihar initially asserts Wal-Mart knew, or should have known, that the crosswalk where Bostian struck Intihar was defective, the crosswalk constituted a safety hazard for its customers entering and leaving the store, and the posting of stop signs could have prevented the accident. *See* Intihar's Brief at 16-17.

As to the causation, Intihar argues Bostian's careless driving was a foreseeable risk that did not relieve Wal-Mart of liability because the design of the roadway increased the risk of similar accidents occurring. *See id*. at 18-20. She asserts the fact that Wal-Mart placed stop signs at the crosswalk

after prior accidents would allow a reasonable jury to conclude that Wal-Mart was a substantial factor in bringing about her injuries. ***See id***. at 21. She further contends that "[t]raffic calming devices would have caused vehicle traffic in front of Mr. Bostian to stop before the crosswalk, would have alerted Mr. Bostian to his duty and obligation to stop before the crosswalk, and would have prevented the injuries and damages to [her]." ***Id***. at 22.[7] She maintains that Avrit's opinion that the accident would not have occurred had Wal-Mart installed appropriate traffic calming devices raised a genuine issue of material fact concerning causation and any issues concerning Avrit's methodology, analyses, and conclusions were subjects of cross-examination that went to the weight of his opinion. ***See id***. at 28-29, 31.

The trial court, in its Rule 1925(a) opinion, concluded Intihar failed to establish a genuine issue or material fact that additional or different signage, safety designs, or features would have prevented the accident. ***See*** Trial Court Opinion, 7/7/22, at 12-13. The court reasoned that Bostian's deposition testimony that he only failed to see and stop for Intihar due to his own inattentiveness established that Bostian was the sole cause of the accident.

_____

[7] Intihar also argues the trial court violated ***Borough of Nanty-Glo v. American Surety Co. of New York***, 163 A. 523, 524 (Pa. 1932), which prohibits a court from entering judgment as a matter of law based exclusively on oral testimony, when the court considered Bostian's deposition testimony. ***See*** Intihar's Brief at 25-28. Intihar did not preserve a ***Nanty-Glo*** objection in her answer to Wal-Mart's motion for summary judgment. Therefore, we find this claim waived. ***See Krentz v. Consolidated Rail Corp.***, 910 A.2d 20, 37 (Pa. 2006) (discussing waiver of a ***Nanty-Glo*** issue on appeal); ***Lineberger v. Wyeth***, 894 A.2d 141, 149 (Pa. Super. 2006) (same).

*Id*. at 12. The court further concluded Avrit's report did not raise "material questions" concerning causation. *See id*. at 13-15. The court explained that Avrit opined that additional traffic control signals, such as stop signs, could have prevented the accident, but Bostian testified that he believed a stop sign already governed the crosswalk. The court emphasized that "Avrit's report fail[ed] to take into consideration" Bostian's deposition testimony that he struck Intihar because he got "distracted" when he believed someone had called his name and turned his head away from the direction of the crosswalk. *Id*. at 13-14. According to the court, even if Walmart installed stop signs as Avrit recommended, Bostian's deposition testimony established that he would not have seen them because of the distraction. *See id*. at 15. The court, among other reasons,[8] concluded that a reasonable finder of fact could not find Wal-Mart's design of the parking lot was a proximate cause of Intihar's injuries. *See id*.

Our review of the record and Intihar's arguments compels us to conclude that no relief is due. As discussed by the trial court, the record demonstrates

---

[8] We note that the trial court, when discussing Avrit's report, cited case law concerning the competence of an expert opinion and several factors cited by Wal-Mart that would affect the weight of the Avrit's opinion. *See* Trial Court Opinion, 7/7/22, at 13-14 (discussing the Avrit's report's lack of foundation and Avrit's failure to cite applicable industry standards or studies demonstrating that stop signs would be superior to yield signs). We disagree with the trial court that these factors merited summary judgment. *See Bourgeois*, 242 A.3d at 658 (concluding that this Court erred by failing to view expert reports in a light most favorable to the non-moving party and disregarding the reports because they failed to define industry standards).

that the critical force giving rise to the accident was Bostian's belief that he heard someone call his name, and there was no indication that additional or different signage or markings could have prevented the specific accident injuring Intihar.[9]

We acknowledge, as did the trial court, Intihar's production of Avrit's report opining that "Bostian's careless driving could have potentially been ameliorated with a reasonably designed parking lot that included appropriate traffic calming devices" and "had such additional traffic calming measures been in place, the subject incident would likely have been avoided altogether." Avrit's Report, 12/15/21, at 7; **see also** Trial Court Opinion, 7/7/22, at 13-15. In support of these conclusions, Avrit opined regarding Wal-Mart's duties to maintain the store's parking lot to (1) "[m]inimize the number of decisions a driver needs to make so it reduces the risk of not seeing one thing because their attention is distracted by multiple other threats that need to be avoided[;]" and (2) "[i]nstall and maintain adequate traffic control or traffic calming devices to slow traffic down so there is more time to perceive and

---

[9] Intihar does not dispute the evidence that Bostian looked away from the crosswalk when he believed he heard someone calling his name. Moreover, although there is some indications that Intihar and Bostian may have seen each other before Intihar entered the crosswalk and Bostian had been following several cars that passed through the crosswalk before the accident, Intihar does not develop arguments based on those facts in her arguments before this Court; nor did she do so in response to Wal-Mart's motion for summary judgment before the trial court. We recognize this Court's plenary scope of review requires consideration of the entire record. **See Fackler**, 835 A.2d at 715. At the same time, we may not develop arguments on behalf of an appellant. **See 9795 Perry Highway Mgmt., LLC v. Bernard**, 273 A.3d 1098, 1103 (Pa. Super. 2022), *appeal denied*, 289 A.3d 888 (Pa. 2022).

react to all potential threats." Avrit's Report, 12/15/21, at 4. Avrit noted, "Slowing traffic down gives a driver more time to make decisions (particularly when faced with multiple decisions at specific points in the parking lot) and avoid all potential threats or interference." *See id*.

Turning to the specifics of the accident that injured Intihar, Avrit noted that around the location of the accident, a driver faced "multiple specific decisions all at once[,]" including: (1) clearing vehicular traffic from the driver's left; (2) clearing pedestrian traffic in the upcoming crosswalk; (3) clearing pedestrian traffic going to and coming from the parking lot from multiple directions; and (4) looking for a parking space. *Id*. Avrit asserted because a driver needed to "have their head on a swivel" to take in the information and make multiple decisions at one, and without adequate traffic controls, it was foreseeable that a pedestrian would go unnoticed. *Id*. at 5. Avrit noted that the lack of sufficient traffic calming measures created "a high risk of pedestrian-vehicle interactions which are specifically dangerous for pedestrians." *Id*. at 6. Avrit proceeded to opine that that "[t]raffic control devices, such as stop signs, are means" to clearly communicate the intentions of drivers and pedestrians, reduce the speed of traffic, and "significantly increases the ability/likelihood of a driver to observe and avoid potential hazards such as pedestrians cross through" the driver's path of travel. *Id*.

Thus, Avrit's specific opinions and conclusions were based on a general theory that complex decisions a typical driver confronts when driving in front of the store. Despite indicating that he reviewed Bostian's deposition,

moreover, Avrit formed no opinions based on the specific and somewhat atypical facts of *this case*. Avrit made no mention of Bostian's familiarity with the parking lot, Bostian's belief, albeit mistaken, that his movement was already controlled by stop signs. Critically, Intihar presented no evidence that any of the multiple decisions Avrit discussed caused Bostian's failure to perceive Intihar or stop for the pedestrian crosswalk. Rather, it was Bostian's reflexive reaction to believing someone called his name that caused him to look away from the roadway. Based on this record, we agree with the trial court that Avrit's report did not have a sufficient basis in the record to raise a genuine issue of material fact that the absence of a traffic control device, such as a stop sign, either caused or increased the risk of Bostian failing to see Intihar, failing to stop at the crosswalk, and ultimately striking Intihar when she in the crosswalk.

In sum, Intihar's evidence did not establish genuine issues of material facts causally linking the allegedly defective traffic controls to this unfortunate accident. Accordingly, she did not establish a *prima facie* claim of negligence against Wal-Mart. Finding no error or abuse of discretion in the trial court's order granting summary judgment in favor of Wal-Mart, we affirm.

Order affirmed.

Judge Pellegrini joins this memorandum.

Judge Stabile concurs in the result.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/8/2023</u>