J-A19010-24

2025 PA Super 25

| MICHAEL MCALEER AND ELAINE MCALEER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| | : | No. 1542 MDA 2023 |
| GEISINGER MEDICAL CENTER, GEISINGER CLINIC, AND CHRISTOPHER BUZAS, O.D. | : | |

Appeal from the Order Entered November 1, 2023
In the Court of Common Pleas of Montour County
Civil Division at No(s):  2021-00181

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.:                    **FILED: JANUARY 28, 2025**

Michael McAleer (McAleer) and his wife, Elaine McAleer (collectively "Appellants"),[1] appeal from the order granting summary judgment in favor of Geisinger Medical Center, Geisinger Clinic, and Christopher Buzas, O.D. (collectively "Appellees"). In an accompanying opinion, the trial court also determined that Appellants' expert, Dr. Isaac Raijman, was not qualified to opine on the standard of care applicable to Dr. Buzas. Appellants challenge the opinion and order. After careful review, we reverse the order and remand to the trial court for further proceedings consistent with this opinion.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The underlying complaint stated a loss-of-consortium claim on behalf of Mrs. McAleer.

On June 19, 2018, McAleer underwent a routine colonoscopy with his primary care physician. An initial scope identified two large polyps in the ascending colon. Polyp removal was attempted with a hot snare, but the removal was incomplete.

On December 28, 2018, a repeat colonoscopy was performed by the primary care physician. A large polyp was again identified in the ascending colon. However, the medical record noted that the polyp was again only partially removed due to the size of the polyp and the patient's body movements. The pathology report from the repeat colonoscopy demonstrated a tubular adenoma.

The primary care physician referred McAleer to a surgeon for evaluation of a possible partial colectomy to remove the large tubular adenoma. The referral noted: "anesthesia recommends that any further attempts at colonoscopy be done under general anesthesia."

At a six-month follow-up appointment, the primary care doctor reviewed the results of the December colonoscopy with McAleer and discussed the need to see a colorectal surgeon about either a possible partial colectomy or a repeat colonoscopy under full and complete anesthesia.

On May 9, 2019, McAleer met with Dr. Buzas at Geisinger Medical Center for evaluation. At the initial evaluation, Dr. Buzas noted, "not amendable to endoscopic resection." Dr. Buzas indicated he "[d]iscussed laparoscopic, possible open right hemicolectomy, possible ostomy," and the risks of such.

*See* Motion for Summary Judgment, 6/26/23, at Exhibit F. At his deposition, McAleer testified Dr. Buzas never mentioned the idea of another colonoscopy. McAleer said something had to be done to remove the polyp, and it was up to Dr. Buzas as his surgeon to make the decision how to do it, not him. ***See id.*** at Exhibit J. Based on his assessment, Dr. Buzas scheduled McAleer for colorectal surgery.

On July 10, 2019, Dr. Buzas performed a robotic-assisted laparoscopic right hemicolectomy under general endotracheal anesthesia. McAleer was discharged home two days later.

Six days post-surgery, McAleer presented to the Emergency Department at Geisinger Medical Center due to abdominal pain, nausea, and vomiting. Due to post-operative complications, including a blood clot, ischemia in the right colon and necrosis of a portion of the right bowel, McAleer had to undergo several subsequent surgeries, including bowel resections, an ileostomy and an eventual reversal of the ileostomy.

On September 15, 2021, Appellants filed a complaint against Appellees asserting professional medical negligence and loss of consortium. As to the alleged negligence, the gist of Appellants' claims was that Dr. Buzas recommended and performed a procedure that was counter-indicated for

McAleer's situation. Notably, the complaint did not allege, or include a cause of action for, lack of informed consent.[2]

As part of discovery, Appellants submitted two expert reports. The first was completed by Ralph Silverman, M.D., who is board certified in colon and rectal surgery and general surgery. Dr. Silverman opined the standard of care in this case would have been to either (a) repeat the colonoscopy under general anesthetic, or (b) refer McAleer for an endoscopic mucosal resection. **See** Motion for Summary Judgment, 6/26/23, at Exhibit K. Dr. Silverman opined that "[r]easonable care would have been to offer this patient [one of those] two avenues." **Id.** Instead, the only option given to McAleer was surgery. The second report was completed by Dr. Raijman, who is board certified in internal medicine and gastroenterology. **See id.** at Exhibit L. Dr. Raijman concluded Dr. Buzas failed to fully assess McAleer prior to surgical intervention. Like Dr. Silverman, Dr. Raijman concluded that by failing to offer McAleer endoscopic resection, Dr. Buzas violated the standard of care. **See id.** Both experts stated McAleer should have never been sent to surgery.

On June 26, 2023, following resolution of preliminary objections and discovery, Appellees filed a motion for summary judgment pursuant to

---

[2] Under the informed-consent doctrine, a physician must disclose those risks "that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation." **Gouse v. Cassel**, 615 A.2d 331, 334 (Pa. 1992). A lack-of-informed-consent claim sounds in battery rather than negligence. **See Montgomery v. Bazaz–Sehgal**, 798 A.2d 742, 748– 49 (Pa. 2002).

*Pomroy v. Hospital of the University of Pennsylvania*, 105 A.3d 740 (Pa. Super. 2014). Specifically, Appellees asserted that summary judgment should be granted, and the claim for medical negligence dismissed with prejudice, because, under *Pomroy*, "the only claims in this case supported by [Appellants'] medical experts relate to informed consent for surgery, and [Appellants] have not pled a lack of informed consent against [Appellees]." Motion for Summary Judgment, at 1.

On November 1, 2023, the trial court entered an order granting the motion for summary judgment. In an accompanying opinion, the court based its decision on *Pomroy*, finding the issues and facts raised herein "remarkably similar." Trial Court Opinion, 11/1/23, at 4. This timely appeal followed.

In reviewing a trial court's grant of summary judgment, we are guided by the following principles:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Good v. Frankie & Eddie's Hanover Inn, LLP*, 171 A.3d 792, 795 (Pa. Super. 2017) (citation omitted).

"In order to set forth a cause of action in negligence, [a plaintiff is] required to plead sufficient facts which would establish that: (1) the doctor

- 5 -

owed them a duty of care; (2) the doctor breached that duty; (3) they were injured; and (4) the injuries were proximately caused by the doctor's breach of duty." **Crosby v. Crosby v. Sulz**, 592 A.2d 1337, 1340 (Pa. Super. 1991) (citation omitted). "Moreover, the plaintiff must offer an expert witness who will testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable standards, and that such deviation was the proximate cause of the harm suffered." **Eaddy v. Hamaty**, 694 A.2d 639, 642 (Pa. Super. 1997) (citation and internal quotation marks omitted).

> Alternatively,
>
> [t]he legal duty imposed under the doctrine of informed consent must be carefully distinguished from that imposed under the doctrine of medical malpractice. The doctrine of informed consent requires physicians to provide patients with "material information necessary to determine whether to proceed with the surgical or operative procedure to remain in the present condition." The physician must give the patient:
>
>> [a] true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results. Thus, a physician must advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation.
>
>> "Lack of informed consent is the legal equivalent to no consent [.]" Thus, a claim that a physician failed to obtain the patient's informed consent sounds in battery, not negligence. There is no cause of action in Pennsylvania for negligent failure to gain informed consent.

**Pomroy**, 105 A.3d at 746 (citations omitted).

In its opinion and order, the trial court concluded that Appellants' claims were in the nature of battery involving lack of informed consent, not negligence and, therefore summary judgment was proper. Further, the court concluded that Dr. Raijman was not qualified to establish that the care and treatment provided fell short of the required standard of care.

On appeal, Appellants raise the following issues:

1. Whether the trial court erred as a matter of law in holding that the Appellants' claims are in the nature of battery involving informed consent and a negligence claim was precluded where Appellants' expert reports, deposition testimony and medical records support that Defendant physician did not conform to the standard of care by selecting for his patient an inappropriate surgical approach to removal of a polyp.

2. Whether the trial court erred as a matter of law in holding that the Superior Court opinion in **Pomroy** [], is dispositive and controlling in requiring summary judgment to be entered in favor of Defendants/Appellees where, in **Pomroy**, the doctor did not recommend the procedure performed but the patient nevertheless insisted upon the Defendant doctor performing it; whereas, in the instant case, the doctor selected the surgery performed and the patient, Mr. McAleer, followed the doctor's advice but Defendant/Appellee surgeon was negligent in selecting the procedure which he chose to perform, instead of a safer, less invasive surgery; and where the court did not even note the factual distinction between **Pomroy** and the instant case, even though it was clearly pointed out to the [c]ourt.

3. Whether jurisprudence from Pennsylvania supports bringing a claim against an operating surgeon for negligently selecting the wrong procedure because it is outside the standard of care and demonstrates that the lower court erred in applying **Pomroy** beyond it limits to conclude erroneously that such a negligence claim was precluded?

4. Whether the trial court erred as a matter of law in finding that one of Appellants' highly qualified experts, Dr. Isaac Raijman, a board-certified gastroenterologist with 30 years of experience in

- 7 -

Gastroenterology and Interventional endoscopy, would not be permitted to provide an opinion under the MCARE Act based upon the observation that the defendant doctor was a colorectal surgeon, although the court heard no testimony from the Appellees' or the Appellants' expert and performed no further inquiry with respect the expert's qualifications.

*See* Appellants' Brief, at 6-8.

As the first three issues raised by Appellants are related, we address them together. The crux of Appellants' claims is that the trial court erred in finding the decision in **Pomroy** dispositive under the circumstances here. The Pennsylvania Association for Justice, in an amicus brief, agrees that **Pomroy** is distinguishable. We join in that assessment and find that **Pomroy** does not support the trial court's conclusion.

In **Pomroy**, the estate of a deceased woman filed a medical malpractice suit against a doctor after the woman died as a result of complications from a surgical polyp removal. Prior to the surgery, the woman met with the doctor to discuss her options. The doctor advised of two options: (1) a saline colonoscopy, or (2) surgical removal. The doctor explained the risks of both and recommended the colonoscopy. The woman, however, insisted on the surgical option, and repeatedly rejected the colonoscopy option, due in part to advice she had received from a referring physician. Consequently, the doctor performed the operation. Following the surgery, the woman suffered a series of complications that resulted in her unfortunate death.

The estate filed a medical malpractice suit against the doctor, claiming the doctor should have insisted on the colonoscopy. The estate's expert

testified to the applicable standard of care, asserting the colonoscopy option "should have been what he offered" to the woman. **Pomroy**, 105 A.3d at 746. The expert further testified that the doctor should have refused to perform the surgery, despite the woman stating she wanted the surgical option. **See id.** at 747. There was no claim the doctor failed to secure informed consent from the woman, nor was there any claim the doctor committed professional negligence while operating on the woman.

A jury returned a verdict in favor of the woman's estate. The doctor filed post-trial motions for judgment notwithstanding the verdict, which were denied. The doctor then appealed.

On appeal, this Court reversed the decision of the trial court, holding there was no evidence of causation to support the jury's medical malpractice verdict, and that the estate failed to establish a valid standard of care required of the doctor.

In their appellate brief, the estate claimed the doctor breached the standard of care by not insisting that the woman undergo the colonoscopy, and that when she refused, the doctor should have rejected her request for surgery. Therefore, the estate had to prove "but for" the doctor's failure to insist on the colonoscopy method, the woman would have rejected the surgical option and would have elected the colonoscopy.

This Court found there was no evidence offered at trial to show the woman would have rejected the surgical option and chosen the colonoscopy if

the doctor had refused to perform the surgical procedure. As such, the doctor's failure to insist on one procedure over the other was not the cause of her fatal injuries. The doctor explained the risks of both procedures to the woman and she, being aware of these risks, elected the surgical option. Accordingly, this Court concluded there was no evidence of causation to support a finding of negligence.

The Court further found no valid standard of care had been established to support a negligence claim. This Court highlighted the incongruous phrasing of the expert's statement of the standard of care and his descriptions of the doctor's alleged breach of the standard of care. In any event, this Court found that all versions of the standard of care presented by the expert were untenable, one of which required the physician to refuse to provide medically necessary treatment.

Here, the trial court contends that **Pomroy** "held that a failure to **advise or offer** options or alternatives is inherent in a battery/informed consent case." Trial Court Opinion and Order, 11/1/23, at 6 (emphasis added). The trial court uses this assertion to conclude that "the **performance** of the 'wrong procedure' presents an issue of informed consent, not of professional negligence of failure to adhere to the standard of care." **Id.** at 6 (emphasis added). We find this correlation to be incongruous as the action of advising a patient prior to surgery is simply not the same as the actual performance of a procedure.

Further, we note that the holding in **Pomroy** did not concern informed consent. Rather, the holding in **Pomroy** was that the estate's negligence claim failed because the estate failed to establish two necessary factors for a negligence claim: (1) causation, and (2) a valid standard of care. While informed consent was discussed in the analysis of whether the estate had established a valid standard of care required of the doctor, the holding itself did not concern informed consent.

The proper analysis for a motion for summary judgment, in a case where medical professional negligence is asserted, is to determine if Appellants presented sufficient evidence to create a genuine issue of material fact regarding causation and a breach of the standard of care. **See Crosby**, 592 A.2d at 1340. **Pomroy** does not support the same conclusion under the facts here. In **Pomroy**, there was no proof of causation because the evidence showed that the woman would have rejected the treatment that the estate claimed the doctor should have recommended; furthermore, there was no proof of a breach of the standard of care because the estate's expert equivocated on what the standard of care was and essentially required the physician to refuse to provide medically necessary treatment. **See id.** at 745-48.

Here, in contrast, there was no evidence that McAleer would have refused a colonoscopy under general anesthesia or an endoscopic procedure. Instead, Dr. Buzas did not even give McAleer any options before performing

the surgery that caused his damages. Further, as set forth above, Appellants' expert reports stated unequivocally that Dr. Buzas breached the standard of care in failing to properly assess McAleer, and that if Dr. Buzas had properly assessed McAleer, a colonoscopy under general anesthesia or an endoscopic procedure should have been performed, and consequently McAleer would not have suffered the complications he did. Therefore, Appellants presented evidence of both causation and standard of care to support their medical malpractice claim.

Further, we cannot agree with the trial court's assessment of two words used in both cases—"offer" and "option"—to prove a correlation between these two cases. We have no question that the trial court made an earnest attempt to rule on the motion for summary judgment. However, the trial court misapplied the ways in which those words are used in each case. In **Pomroy**, the expert stated that a colonoscopy is what the doctor should have *offered*, and that the doctor was negligent in not pursuing the colonoscopy *option*. Importantly though, that option actually was given to the patient; she just chose not to take it. The facts here are not the same: the woman in **Pomroy** was offered an option within the standard of care and chose not to take it; McAleer was not given any option within the standard of care and therefore did not have the opportunity to even choose or reject an option within the standard of care.

As we find **Pomroy** is not dispositive to the facts of this case, we are constrained to find the trial court's decision to grant summary judgment based on **Pomroy** was in error. Accordingly, we reverse the trial court's order granting Appellees' motion for summary judgment.

Next, Appellants contend the trial court erred in disqualifying one of their experts based solely on his curriculum vitae ("CV").

Dr. Raijman authored a report in which he concluded "[t]he failures described here represent a failure to adhere to the standard of care and were therefore negligent." Motion for Summary Judgment, 6/26/23, at Exhibit L. The trial court concluded that Dr. Raijman, as a gastroenterologist, was "not qualified to opine on the standard of care applicable to Dr. Buzas, a colorectal surgeon." Trial Court Opinion and Order, 11/1/23, at 4.

Pursuant to the MCARE Act, a professional testifying to a physician's standard of care must satisfy several requirements.

**Expert qualifications**

(a) GENERAL RULE.—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) MEDICAL TESTIMONY.—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching. Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) STANDARD OF CARE.—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

(d) CARE OUTSIDE SPECIALTY.—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

(e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND KNOWLEDGE.—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a

result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512 ("Section 512").

Citing Section 512(c), the trial court concluded Dr. Raijman "is not qualified to opine on the standard of care applicable to Dr. Buzas." The court based this determination solely on the fact that Dr. Raijman is board certified in internal medicine and gastroenterology, not colorectal surgery, the specialty of Dr. Buzas.

While it is undisputed that Dr. Raijman works in a different subspecialty, the court made no determination of whether the two subspecialities have "a substantially similar standard of care for the specific care at issue," another avenue allowed by Section 512(c).

Further, the trial court made no determination with regard to Section 512(e). "[Section 512(e)] allows a court to waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience, and knowledge to provide the testimony as a result of active involvement in … medicine in a … related field of medicine within the previous five-year time period." **George v. Ellis**, 911 A.2d 121, 131 (Pa. Super. 2006) (citing 40 P.S. § 1303.512(e)).

Accordingly, we agree it was improper to hold that Dr. Raijman was not qualified to opine as an expert in this case based solely on his certification as

- 15 -

a gastroenterologist and his CV. ***See Wexler v. Hecht***, 847 A.2d 95, 105 n.7 (Pa. Super. 2002) ("We stress that we do not condone the practice of relying solely on an expert's curriculum vitae when determining whether he or she is competent to testify. Rather, the better practice is for trial courts to take evidence directly from the expert before ruling on the issue."), aff'd 928 A. 2d 973 (Pa. 2007); ***see also Smith v. Paoli Memorial Hospital***, 885 A.2d 1012, 1018 n. 2 (Pa. Super. 2005) (citing ***Wexler*** with approval). As we are reversing the order granting summary judgment, we direct the trial court to revisit its decision regarding whether Dr. Raijman is qualified to testify as an expert in this case in conformity with this Court's discussion of this matter.

For all the reasons discussed in our above analysis, we reverse the November 1, 2023 order and remand to the trial court for further proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/28/2025